UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. V. GRUBBS, JR.,

               Plaintiff,                    Case No. 2:16-cv-10426
                                         District Judge Avern Cohn
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13) and GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, L. V. Grubbs, Jr., brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance

(DI) benefits and supplemental security income (SSI) benefits. This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross

motion for summary judgment (DE 14) and the administrative record (DE 9).

## A.    Background

### 1.    The April 19, 2011 Hearing

Plaintiff filed her applications for benefits on July 29, 2009, alleging that she

has been disabled since June 18, 2008, at age 49.  (R. at 104-114.)  Plaintiff's

applications were denied and she sought a *de novo* hearing before an

Administrative Law Judge ("ALJ").  (R. at 69-79, 80.)  ALJ John W. Belcher held

a hearing on April 19, 2011 – at which Plaintiff was unrepresented - and, on May

13, 2011, determined that Plaintiff was not disabled within the meaning of the

Social Security Act.  (R. at 29-68, 13-25, 393-405; *see also* R. at 26.)

In the Fall of  2011, Plaintiff secured representation.  (R. at 10-11, 499.)  On

September 17, 2012, the Appeals Council denied Plaintiff's request for review, and

she timely commenced an action via counsel in this Court, which culminated in a

March 31, 2014 order remanding the matter to the Commissioner.  (R. at 1-5, 8-9,

12, 406-411, 415-421, 496, 498; *Grubbs, Jr. v. Comm'r of Soc. Sec.*, No. 2:12-cv-

14621-DPH-MJH (E.D. Mich.) (DE 16).  This Court concluded that:

> . . . the failure by the ALJ to address the additional documents
> submitted by Plaintiff and admitted at the hearing by the ALJ, coupled
> by the failure to list and attach the exhibits to the record, require this
> matter be remanded to the Commissioner to address the matter.

(R. at 416 (record citation omitted).)   At issue were Exhibit 7F (the 2010 records from Yasser M. Aleech, M.D.) (R. at 280-290) and a missing Exhibit 8F (from a "family doctor").   After observing that "[i]gnoring the medical evidence from Plaintiff's treating physicians was not harmless . . . [,]" the Court remanded the matter "to further consider Plaintiff's medical records appropriately."  (*See* R. at 415-421.)

### 2.     The July 26, 2013 Hearing

Meanwhile, on October 12, 2012, Plaintiff filed a subsequent application for Title II and Title XVI benefits.  (R. at 309, 454, 572.)  ALJ Ben Barnett held a hearing on July 26, 2013, at which Plaintiff was represented by counsel.  (R. at 354-391.)  On August 15, 2013, the ALJ found that Plaintiff was not disabled, and the Appeals Council denied review on December 18, 2014, which rendered the subsequent claim duplicative.  (R. at 309, 454, 573.)[1]  On February 18, 2015, the Appeals Council remanded the case to the ALJ, directing the ALJ, consistent with this Court's prior remand, *inter alia,* to "address the additional evidence submitted . . . ."  (R. at 454-455.)

### 3.     The June 12, 2015 Hearing

---

[1] On February 12, 2015, Plaintiff filed a complaint against the Commissioner which challenged this decision.  However, on March 30, 2015, Judge Steeh entered a stipulated order withdrawing the complaint.  *See* Case No. 2:15-cv-10556-GCS-MKM (E.D. Mich.).

ALJ Thomas L. Walters conducted the third hearing on June 12, 2015, at which Plaintiff was again represented by counsel. (R. at 326-352). On July 7, 2015, ALJ Walters issued a "partially favorable" decision. (R. at 305-325.) Plaintiff sought review of the hearing decision. (R. at 303-304.) On December 9, 2015, the Appeals Council declined to assume jurisdiction, and ALJ Barnett's decision became the Commissioner's final decision. (R. at 291-295.) Plaintiff then timely commenced the instant action. (DE 1, DE 5.)

### B.      Plaintiff's Medical History

In the field office disability report, Plaintiff alleges that he has been disabled since June 18, 2008. (*See* R. at 136-140; *see also* R. at 159-161.) His combined medical records span the period from January 7, 2008 through September 3, 2014. (R. at 177-290, 578-665.) The approximately 202 pages of medical records are mostly comprised of treatment records, but also include a September 28, 2009 consultative examination report from Bharti Sachdev, M.D. (R. at 266-270) and a November 11, 2009 physical RFC assessment by B. D. Choi, M.D. (R. at 271-278).

These medical records will be discussed as necessary below.

### C.      Hearing Testimony

As noted above, multiple hearings occurred in Plaintiff's case. However, it is the June 12, 2015 hearing before ALJ Walters (R. at 326-352) and his

subsequent July 7, 2015 decision (R. at 305-325) which are the subjects of the instant appeal.  As Plaintiff's credibility is not an issue currently before this Court, I will forego a summary of his testimony here and only cite it as necessary below.

### D.   The Administrative Decision

On July 7, 2015, ALJ Walters issued his "partially favorable" decision.  (R. at 305-325.)  Steps 1 through 4 were based upon the alleged onset date of June 18, 2008.  At **Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity.  (R. at 312.)  At **Step 2**, the ALJ found that Plaintiff has had the following severe impairments:  asthma, chronic obstructive pulmonary disease (COPD), complications with gall bladder surgery,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

anemia, bilateral knee arthrosis, bilateral hand trigger fingers, hand dysfunction status-post left cubital tunnel release surgery at the elbow, and heart rhythm disorders.  (R. at 312-313.)  At **Step 3**, the ALJ found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 313.)  Prior to Step 4 of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[3] to perform the exertional limitations of light work (with an additional walking restriction), with certain other environmental, postural and manipulative limitations.  (R. at 313-318.)  At **Step 4**, the ALJ concluded that Plaintiff has been unable to perform any past relevant work.  (R. at 318.)

The ALJ then noted that, on April 17, 2014 - Plaintiff's 55th birthday - his age category changed to an individual of advanced age.  (R. at 313, 318.)  **The ALJ then made two Step 5 findings considering Plaintiff's age, education, work experience and RFC:**  (1) **prior to April 17, 2014**, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, and (2) **beginning on April 17, 2014**, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 318-319.)  In sum, the ALJ concluded:

_____

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

> After careful consideration of all the evidence, the Administrative
> Law Judge concludes that the claimant was not disabled prior to April
> 17, 2014, but became disabled on that date and has continued to be
> disabled through the date of this decision.  The claimant was not
> under a disability within the meaning of the Social Security Act at any
> time through December 31, 2008, the date last insured.

(R. at 310; *see also* R. at 319-320.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff has clarified that this appeal only involves "Plaintiff's disability from June 18, 2008 through April 17, 2014 . . . ." (DE 13 at 9.)  Specifically, Plaintiff claims that ALJ Walters erred by failing to:  **(1)** comply with the Appeals Council's February 18, 2015 order and continuing to rely upon the November 11, 2009 physical RFC assessment by Dr. Choi, who did not have access to "significant records at the time of his exam," namely the records from Dr. Aleech or Ryan Beekman, M.D., of Allegiance Orthopedics; **(2)** offer support for the RFC determination; **(3)** include the required "function-by-function" assessment in the RFC finding; and, **(4)** obtain an updated opinion by a medical advisor or an updated consultative examination.  (DE 13 at 20-28.)

The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 14 at 1, 9-26.)  I will address each argument in turn.

### 1.    Compliance with the Appeals Council's Order

Plaintiff claims that the ALJ failed to comply with the Appeals Council's order.  (DE 13 at 20.)  I disagree.  On March 31, 2014, with specific mention of Exhibits 7F and 8F, this Court remanded Plaintiff's case to "further consider Plaintiff's medical records appropriately."  (R. at 416, 418.)  The Appeals

Council's February 18, 2015 order remanded the case "for further proceedings consistent with the order of the court." (R. at 454-455.)

Plaintiff contends that "despite instructions to the contrary," the ALJ erred by "continu[ing] to rely upon a consultative examiner who did not have access to significant records at the time of his exam." (DE 13 at 20.) This statement is incorrect and misleading. As the Commissioner correctly points out, this Court's March 31, 2014 order "does not even address Dr. Choi's opinion, let alone direct the agency to weigh it in any particular manner[.]" (DE 14 at 12, 415-421.) In light of this Court's finding that the original ALJ had "ignor[ed] the medical evidence" and his "disregard of what could be substantial evidence," the ALJ on remand was simply directed to "further consider" the records in question because of a previous "failure by the ALJ to address" them and "failure to list and attach the exhibits to the record." (R. at 416, 418.) As will be explained in greater detail below, it is unquestionable that on remand ALJ Walters "appropriately" did so as to Exhibits 6F, 7F, 8F and 11F. In fact, the ALJ expressly mentioned each of the eleven medical record exhibits within his Step 4 RFC determination. (*See* R. at 313-318.) Nothing more was required to satisfy the Appeals Council's directive.

### 2. Evaluating Opinion Evidence (20 C.F.R. §§ 404.1527, 416.927)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(b), 416.927(b). The

regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The heart of Plaintiff's first two statements of error is his assertion that the ALJ assigned "great weight" to the November 11, 2009 physical RFC assessment of Dr. Choi (Ex. 6F), who did not have access to the 2010 through 2014 records from Dr. Aleech (Ex. 7F, Ex. 11F) or the 2013 records from Dr. Beekman (Ex. 8F).  (DE 13 at 20-23, 23-24.)  Therefore, the Court will consider whether the ALJ appropriately considered the opinions of these three physicians:

### a.    Dr. Choi (Exhibit 6F)

#### i.    November 11, 2009 physical RFC assessment

On November 11, 2009, Dr. Choi completed a physical RFC assessment form.  (R. at 271-278.)  He assessed exertional limitations that are consistent with light work.  (R. at 272.)  He also determined that Plaintiff was occasionally limited

for most postural activities, although he was frequently limited for balancing. (R. at 273.) Dr. Choi opined that Plaintiff did not have manipulative, visual or communicative limitations; however, he had several environmental limitations, including avoiding concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards. (R. at 274-275.) Dr. Choi concluded that Plaintiff was only "partially credible," explaining that "the diagnoses would not support his statement of only able to walk 2 feet and then require 2 hours of rest." (R. at 276.) Moreover, Dr. Choi stated:

> Claimant's impairments are not found to limit his ability to stand/walk; however, for only two feet or support limitations in standing, sitting or using hands to the degree alleged. Claimant's statements regarding his limitations are somewhat less than fully credible.

(R. at 278.) In other words, Dr. Choi did not find Plaintiff fully credible with respect to alleged exertional[4] and manipulative limitations.

## ii.    Consideration of Dr. Choi's opinion

Dr. Choi's assessment was originally addressed by ALJ Belcher in his May 13, 2011 decision, although he did not make an express assignment of weight to this evidence. (R. at 20, 400.) Following this Court's remand,[5] ALJ Walter's July

---

[4] Exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling . . . ." 20 C.F.R. §§ 404.1569a(b), 416.929a(b).

[5] It was also mentioned in this Court's February 4, 2014 report and recommendation (R. at 426, 433-434, 446), but it was not mentioned in this

7, 2015 decision assigned Dr. Choi's opinion "great weight," and provided the

following explanation:

> In terms of the opinion evidence, the undersigned gave great weight to the physical [RFC] assessment completed by B. D. Choi, M.D., dated November 11, 2009, to the extent that the claimant had physical impairments (e.g., asthma, knee arthrosis, trigger fingers, and status-post cholecystectomy) that limited him to the performance of light exertion work.  Dr. Choi was familiar with the disability program and its requirements.  Further, he had the opportunity to review the entire record and his finding was largely consistent with the evidence of record prior to the claimant's established onset date and supported the RFC adopted above (Ex. 6F [R. at 271-278]).

(R. at 317-318.)

ALJ Walters appropriately considered Dr. Choi's opinion.  First, the ALJ

considered the consistency factor in 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Second, the ALJ acknowledged that "[s]tate agency medical and psychological

consultants and other program physicians, psychologists, and other medical

specialists are highly qualified physicians, psychologists, and other medical

specialists who are also experts in Social Security disability evaluation."  20 C.F.R.

§§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Third, any inaccuracy in the ALJ's

statement that Dr. Choi "had the opportunity to review the entire record . . .." is

harmless. (R. at 317.)  The ALJ acknowledged that the record in Ex. 6F was dated

2009, the records from Ex. 7F were dated 2010, the records from Ex. 8F were

---

Court's March 31, 2014 opinion in Case No. 2:12-cv-14621-DPH-MJH (R. at 415-421.)

dated 2013, and the records from Ex. 11F were dated 2012 – 2014.  (R. at 315-316, 317-318.)  Thus, the ALJ made clear his awareness that the records from Drs. Aleech and Beekman post-dated the 2009 opinion of Dr. Choi, leading to the conclusion that the ALJ's statement was either a typographical error or uncorrected boilerplate and that, instead, he intended to state that Dr. Choi "had the opportunity to review the entire record . . ." *at the time of his 2009 decision*.  Also, as noted above, the ALJ provided two other reasons to lend weight to Dr. Choi's opinion. Finally, as the Commissioner points out, Plaintiff has failed to show how Dr. Aleech's pulmonary treatment notes from 2010 "suggest a more restrictive RFC finding than the one the ALJ made."  (DE 14 at 13.)  In fact, the ALJ expressly acknowledged Dr. Aleech's observation that Plaintiff's January 2010 breathing test reflected "improve[ment] from his spirometry in 1997 . . . [,]" and Dr. Aleech's office notes from September 2012, which reflect Plaintiff's report that his breathing was "significantly improved" with Advair and Singulair.  (R. at 315, 287, 661.)

Moreover, the fact that Dr. Choi's opinion was based on an "incomplete record," by itself, is not fatal.  At the outset, I note that each of the parties misconstrues *Blakley v. Commissioner of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), with Plaintiff suggesting that the assignment of "great weight" to an agency physician whose opinion is based upon an "incomplete record" over that of a

treating source automatically constitutes "reversible error" (DE 13 at 22) and the

Commissioner asserting that the ALJ is only required to indicate that "*the ALJ* at

least considered [*later evidence*] . . . ." (DE 14 at 12-13 (brackets in original;

emphasis added).) In other words, the Commissioner construes *Blakely* as only

requiring the ALJ to have reviewed the later evidence himself. *Instead*, the *Blakely*

opinion reads:

> Here, however, the Agency's non-examining sources offered their
> opinions, upon which the ALJ relied, on June 30, 2005, and
> September 21, 2005. Consequently, those non-examining sources did
> not have the opportunity to review, at minimum, Dr. Kibler's October
> 2005 assessment, Dr. Kibler's December 2005 restrictions, Dr.
> Muffly's June 2006 review, and Dr. Raza's psychiatric treatment
> records. And because much of the over 300 pages of medical evidence
> reflects ongoing treatment and notes by Blakley's treating sources,
> "we require some indication that the ALJ at least considered these
> facts before giving greater weight to an opinion that is not 'based on a
> review of a complete case record.'" *Fisk v. Astrue,* 253 Fed.Appx.
> 580, 585 (6th Cir.2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL
> 374180, at *3).

*Blakley*, 581 F.3d at 409. Fortunately, the Sixth Circuit has more recently

acknowledged that it is incorrect to construe *Blakley* as "providing a blanket

prohibition on an ALJ's adoption of a non-examining source opinion, where that

source has not reviewed the entire record." *Kepke v. Commissioner of Social Sec.*,

636 F.App'x 625, 632 (6th Cir. 2016). Instead, the Sixth Circuit clarified:

> The Court's holding in *Blakley* is far more limited, requiring only that
> before an ALJ accords significant weight to the opinion of a non-
> examining source who has not reviewed the entire record, the ALJ
> must give "*some indication*" that he "*at least considered*" that <u>the</u>

> *source did not review the entire record*.  In other words, the record
> must give some indication that the ALJ subjected such an opinion to
> scrutiny.

*Kepke*, 636 F.App'x at 632 (emphasis added) (internal citation omitted).  Thus,

what the Sixth Circuit requires is that the ALJ acknowledge his awareness that *the*

*state agency record reviewer* did *not* review the entire record, not merely that the

*ALJ himself did* conduct a full review.  As discussed above, by expressly noting

the dates of Exhibits 7F, 8F and 11F and thereafter assigning Dr. Choi's "physical

residual functional capacity assessment…dated November 11, 2009"  (Ex. 6F)

"great weight," the ALJ gave "some indication" that he knew and "at least

considered" that Dr. Choi did not review the entire record. (R. at 317.)

I further note that the Social Security Ruling (SSR) which comments upon

"consideration of administrative findings of fact by state agency medical and

psychological consultants" provides, in part:

> . . . the opinions of State agency medical and psychological
> consultants and other program physicians and psychologists can be
> given weight only insofar as they are *supported by evidence in the*
> *case record*, considering such factors as the supportability of the
> opinion in the evidence including any evidence received at the
> administrative law judge and Appeals Council levels that was not
> before the State agency, the consistency of the opinion with the record
> as a whole, including other medical opinions, and any explanation for
> the opinion provided by the State agency medical or psychological
> consultant or other program physician or psychologist. The
> adjudicator must also consider all other factors that could have a
> bearing on the weight to which an opinion is entitled, including any
> specialization of the State agency medical or psychological
> consultant.

SSR 96-6P (S.S.A. July 2, 1996) (emphasis added).  As the Sixth Circuit has

explained, "[t]here is no categorical requirement that the non-treating source's

opinion be based on a 'complete' or 'more detailed and comprehensive' case

record.  The opinions need only be 'supported by evidence in the case record.'"

*Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011)

(citing SSR 96-6P).  Thus, Plaintiff's argument that the ALJ erred by continuing to

rely upon the 2009 opinion of Dr. Choi, who did not have access to the 2010 –

2014 records from Dr. Aleech's and Allegiance Orthopedics / Dr. Beekman,  is

unavailing. As noted above and below, these records were expressly considered

and appropriately addressed by the ALJ.

       **b.**    **Dr. Aleech**

       **i.**    **January 11, 2010 – September 1, 2010 (Ex. 7F)**

At the April 19, 2011 hearing, the ALJ anticipated receiving Exhibits 7F and

8F and stated he would admit them into the record.  (R. at 465.)  However Ex. 7

was not listed as having been considered by ALJ Belcher in his May 13, 2011

decision.  (R. at 25, 405.)  At some point, no later than August 8, 2012, the SSA

received Dr. Aleech's medical notes dated January 11, 2010 through September 1,

2010.  (R. at 4-5, 6, 410-411.)  These include:  a January 11, 2010 pulmonary

function test; a January 18, 2010 pulmonary consultation; an August 2, 2010 clinic

progress note; and a September 1, 2010 office progress note.  (R. at 280-290 [Ex.

7F].)  Relatedly, the Appeals Council's September 17, 2012 decision specifically notes:  "We reviewed the medical notes by [Dr. Aleech], dated from January 11, 2010 through September 1, 2010, and determined that these records contain no evidence of functional limitations, and contain no clinical findings that would indicate greater functional limitations than those found by the [ALJ]."  (R. at 1-2, 407-408.)

Approximately one month later, Plaintiff filed Case No. 2:12-cv-14621.[6] This Court's March 31, 2014 order remanding Plaintiff's case noted that these records are relevant, because "it is [a] medical record from Plaintiff's treating physician, [Dr. Aleech], regarding Plaintiff's pulmonary functions."  (R. at 416.) As such, the Court directed that the ALJ "further consider Plaintiff's medical records appropriately" on remand.  (R. at 418.)

### ii.      April 10, 2012 – September 3, 2014 (Ex. 11F)

At some point, and perhaps as a result of Plaintiff's January 7, 2015 notice of recent medical treatment, the SSA received further records from Dr. Aleech, dated April 10, 2012, September 17, 2012, March 21, 2013, March 4, 2014, and

---

[6] Exhibit 7F was received into evidence at the July 26, 2013 hearing on the subsequent application.  (R. at 358.)

September 3, 2014.  (R. at 651-665 [Ex. 11F]; *see also* R. at 560.)[7]  This exhibit

was received into evidence at the June 12, 2015 hearing.  (R. at 330.)

### iii.   Consideration of Dr. Aleech's records

In his July 7, 2015 decision, ALJ Walters acknowledged the Appeal

Council's February 18, 2015 direction to "address the additional evidence

submitted," (R. at 452-455), and expressly addressed Exhibits 7F and 11F.  (R. at

310, 315-316.)  Moreover, the Appeals Council's December 9, 2015 decision

specifically stated:

---

[7]  On or about January 19, 2011, ODAR-Tulsa received a form listing recent
medical treatment from Dr. Aleech on December 22, 2010.  (R. at 170.)  The Court
has not been able to locate documentation of such treatment in the administrative
record.  Also, it seems that, from March into June 2015 – perhaps in preparation
for the June 12, 2015 hearing - Plaintiff provided the SSA with notices of recent
medical treatment, specifically:  **(a)** a February 5, 2015 visit with Kimberly Freese-
Beal, M.D. (R. at 561); **(b)** a March 25, 2015 visit with Dr. O'Conner and a
partially dated visit – seemingly in February - with Dr. Freese-Beal (R. at 567);
and **(c)** a December 12, 2012 visit with Dr. Freeman, a March 15, 2015 visit with
Dr. Freese-Beal, and a September 14, 2015 visit with Dr. Aleech (R. at 569).
These, too, do not appear to be part of the administrative record, because the Court
was able to locate only:  **(a)** July 2009 records from Kimberly Freese-Beal, M.D.
(R. at 236-240, 259-261), **(b)** a reference to a December 12, 2012 EMG performed
by Dr. Freeman (R. at 589-590), and **(c)** medical records as late as September 3,
2014 (R. at 651-653).
  Plaintiff's instant motion (filed on July 18, 2016), focuses on the absence of
records dated 2010 through 2014 by Dr. Aleech and Allegiance Orthopedics / Dr.
Beekman.  However, even if the absence of any of the above-described records
was the subject of the instant appeal, it is of no import here.  When asked at the
June 12, 2015 hearing if she was "waiting for any records at this point[,]"
Plaintiff's counsel responded, "Nothing, Your Honor.  At this time anything we
added would be just cumulative."  (R. at 330.)

> . . .the Administrative Law Judge gave great weight to B. D. Choi,
> M.D. 's opinion to support the residual functional capacity.  While Dr.
> Choi did not have access to the records of Yasser Moussa Aleech,
> M.D., those records do not include additional limitations that would
> indicate the claimant could not perform a range of light work.

(R. at 291.)

Plaintiff argues that the ALJ "failed to comply with the Appeals Council's

[February 18, 2015] remand order," which required "further proceedings consistent

with the order of the court[,]" including a hearing and consideration of "additional

evidence submitted . . . ."  (DE 13 at 20-23; R. at 452-455.)  Here, ALJ Walters

expressly considered Dr. Aleech's opinions dated 2010 through 2014, as contained

in Exhibit 7F and Exhibit 11F.  Specifically, the ALJ made reference to a January

11, 2010 pulmonary function test, the January 18, 2010 pulmonary consultation,

the August 2, 2010 clinic progress notes, the September 1, 2010 office progress

notes, the April 10, 2012 office progress notes, the September 17, 2012 clinic

progress notes, and the March 21, 2013 pulmonary function test and office

progress notes.  (R. at 315-316.)[8]  In addition, although contained within a

paragraph reviewing the January 2010 records, ALJ Walters seems to have

referenced the September 3, 2014 chest x-ray.  (R. at 315, 653.)  Although Plaintiff

"hangs his hat" on the fact that *Dr. Choi's opinion* was not formed with the benefit

of the 2010 through 2014 records from Dr. Aleech (DE 13 at 22, 24), Plaintiff has

---

[8] These medical records are respectively located at R. 290, 285-287, 283-284, 280,
663-665, 661-662 and 656-658.

not shown how *ALJ Walters* was errant in *his consideration* of Dr. Aleech's records.

### c.      Allegiance Orthopedics / Dr. Beekman

#### i.      April 2013 – June 2013 (Exhibit 8F)

As previously noted, at the April 19, 2011 hearing, the ALJ anticipated receiving Exhibits 7F and 8F and stated he would admit them into the record.  (R. at 465.)  However, Ex. 8 was not listed as having been considered by ALJ Belcher in his May 13, 2011 decision.  (R. at 25, 405.)[9]  The missing Exhibit 8F was acknowledged in this Court's March 31, 2014 order.  (*See* R. at 416-418.)  Based on the facsimile stamp, it seems Plaintiff's counsel came into possession of these documents on or about October 3, 2014.  (R. at 578-591.)

Exhibit 8F was admitted into evidence at the June 12, 2015 hearing.  (R. at 330.)  It consists of patient communications records with Allegiance Orthopedics, as well as records for:  **(i)** an April 3, 2013 history and physical with Dr. Beekman; **(ii)** an April 10, 2013 "left cubital tunnel release at the elbow" procedure by Dr. Beekman; **(iii)** an April 23, 2013 post-op visit; and **(iv)** a June 4, 2013 office visit. (R. at 578-591.)

#### ii.      Consideration of Allegiance Orthopedics' / Dr. Beekman's records

---

[9] Exhibit 8F was received into evidence at the July 26, 2013 hearing on the subsequent application.  (R. at 358.)

ALJ Walters's July 7, 2015 decision acknowledges the Appeal Council's February 18, 2015 direction to "address the additional evidence submitted," and expressly addressed the Allegiance Orthopedics records as follows:

> In April 2013, the claimant sought consultative services with an orthopedic specialist for worsening bilateral elbow and hand pain with numbness. He described ulnar nerve sensitivity, cramping in the hands, and tingling in his little and ring finger bilaterally. A physical inspection showed positive Tinel over both elbows and positive elbow flexion test bilaterally. There was negative Tinel over the median nerve. There was slight decrease in thumb to little finger abduction strength on left hand. An electromyography (EMG) demonstrated "mild to moderate" bilateral ulnar neuropathy at the elbow. An impression was bilateral cubital tunnel syndrome. He underwent a left cubital tunnel release surgery at the elbow (Ex. 8F [R. at 578-591]).

(R. at 310, 316; *see also* R. at 452-455.)

Here, too, Plaintiff "hangs his hat" on the fact that *Dr. Choi's 2009 opinion* was not formed with the benefit of Dr. Beekman's records from 2013. (DE 13 at 22, 24.) As was the case with Dr. Aleech's records, Plaintiff has not shown *how ALJ Walters was errant* in his July 7, 2015 consideration of Dr. Beekman's records.

### d.   Conclusion

ALJ Waters expressly considered the records of Drs. Choi, Aleech and Beekman, and Plaintiff has not shown reversible error in the ALJ's July 7, 2015 consideration of these opinions. In sum, the ALJ appropriately assigned "great

weight' to Dr. Choi's November 11, 2009 opinion, and the ALJ's treatment of the opinion evidence should be affirmed.

### 3. Step 4 RFC assessment (20 C.F.R. §§ 404.1545, 416.945, SSR 96-8p)

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson*, 344 F. App'x at 194 (6th Cir. 2009) (quoting *Rohan*, 98 F.3d at 970).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does

23

not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ '"need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."' *Id.* (quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995, 251 F.3d 153, slip op. at 5 (3d Cir. Dec. 19, 2000).

Here, the Court should conclude that the exertional limitations imposed by the ALJ are supported by substantial evidence. First, there is support in the record for the ALJ's conclusion as to Plaintiff's exertional abilities. The ALJ assigned "great weight" to Dr. Choi's November 11, 2009 physical RFC assessment – which included opinions on Plaintiff's exertional, postural, manipulative, visual, communicative and environmental limitations. (R. at 272-275, 317-318.) Dr. Choi assessed exertional limitations that are consistent with light work. (R. at 272.) Accordingly, the ALJ's Step 4 RFC determination included the exertional limitation of "light work," with an additional limitation of "no walking required greater than two city blocks at any given time during the workday." (R. at 313.)

Second, Plaintiff argues that ALJ Walters did not comply with SSR 96-8p and/or 20 C.F.R. §§ 404.1545, 416.945, asserting that "[n]owhere in the ALJ's decision does he separately address Plaintiff's ability to sit, stand, walk, lift, carry,

24

push and pull in the medical documentation he relied upon in coming to his

conclusions[,]" and that "nowhere in the opinion does he specifically address each

functional ability as required by SSR 96-p . . . ." (DE 13 at 25-26.)  In other

words, Plaintiff is challenging ALJ Walters's assessment of his exertional

limitations.  *See* 20 C.F.R. §§ 404.1529a, 416.929a (exertional limitations include

"sitting, standing, walking, lifting, carrying, pushing, and pulling").  However,

while "'a function-by-function analysis is desirable, SSR 96–8p does not require

ALJs to produce such a detailed statement in writing.'"  *Delgado*, 30 F. App'x at

547 (quoting *Bencivengo v. Commissioner of Soc. Sec.*, No. 00-1995, 251 F.3d 153

(3d Cir. Dec. 19, 2000) (unpublished)).  In fact, in a previous case filed by

Plaintiff's counsel, this Court noted it "has repeatedly held that an ALJ need not

address every possible work-related function."  *Gilbert v. Comm'r of Soc. Sec.*, No.

15-CV-11325, 2016 WL 8114195, at *5 (E.D. Mich. Apr. 29, 2016) (report and

recommendation of Majzoub, M.J.), *adopted* 2016 WL 4072476 (E.D. Mich. Aug.

1, 2016) (Lawson, J.).

Finally, "during the first four steps, the claimant has the burden of proof[.]"

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Although this

portion of Plaintiff's argument expressly cites Dr. Choi's November 11, 2009

physical RFC assessment and seemingly points to the ALJ's consideration of the

September 28, 2009 consultative examination by Bharti Sachdev, M.D. (*see* DE 13

at 24-26, R. at 268-270 [Ex. 5F], R. at 271-278 [Ex. 6F], R. at 315), Plaintiff has

not shown how these pieces of evidence would render invalid the exertional

limitations imposed by the ALJ at Step 4.

### 3.    Step 3 medical equivalence determination (SSR 96-6p)

Plaintiff's final argument is that the ALJ erred by failing to obtain an

updated opinion or consultative examination despite the addition to the

administrative record of "over 100 pages of medical records," presumably Exhibits

7F-11F, all of which post-date Dr. Sachdev's September 28, 2009 consultative

examination report (Ex. 5F) and Dr. Choi's November 11, 2009 physical RFC

assessment (Ex. 6F).  (DE 13 at 26-28.)

SSR 96-6p, upon which Plaintiff's argument is based, requires an "*updated*

medical expert opinion" before "a decision of disability based on medical

*equivalence* can be made."  SSR 96-6p (emphases added).  Specifically, "an

administrative law judge and the Appeals Council must obtain an *updated* medical

opinion from a medical expert in the following circumstances:

> When no additional medical evidence is received, but in the opinion
> of the administrative law judge or the Appeals Council the symptoms,
> signs, and laboratory findings reported in the case record suggest that
> a judgment of *equivalence* may be reasonable; or
>
> When additional medical evidence is received that in the opinion of
> the administrative law judge or the Appeals Council may change the
> State agency medical or psychological consultant's finding that the
> impairment(s) is not equivalent in severity to any impairment in the
> Listing of Impairments.

SSR 96-6p (internal footnote omitted) (emphases added).  Furthermore, the Social

Security Ruling provides:

> When an updated medical judgment as to medical *equivalence* is
> required at the administrative law judge level in either of the
> circumstances above, the administrative law judge must call on a
> medical expert. When an updated medical judgment as to medical
> *equivalence* is required at the Appeals Council level in either of the
> circumstances above, the Appeals Council must call on the services of
> its medical support staff.

*Id*. (emphases added).

Plaintiff points out that Dr. Beekman diagnosed "bilateral cubital tunnel

syndrome" on April 3, 2013 and performed a "left cubital tunnel release at the

elbow" on April 10, 2013.  (DE 13 at 27, R. at 586-587, 589-591.)   Moreover,

Plaintiff contends that many of the conditions which the ALJ found to be severe at

Step 2 "were not even referenced in the records reviewed by" Dr. Sachdev and Dr.

Choi.  (DE 13 at 27, R. at 312.)  Plaintiff's Step 3 equivalency argument is

otherwise undeveloped.

Although Plaintiff lists the impairments which the ALJ found to be severe at

Step 2 and notes SSR 96-6p's directive following the receipt of "additional

medical evidence," (DE 13 at 27), it is unclear to this Court how, if at all, Plaintiff

is challenging the ALJ's Step 3 determination that, since June 18, 2008, Plaintiff

"has not had an impairment or combination of impairments that meets or medically

*equals* the severity of one of the listed impairments . . . ."  (R. at 313 (emphasis

27

added).)  This is the standard, and Plaintiff fails to show how it is met.

Accordingly, the ALJ's Step 3 decision should be affirmed.  *Walters*, 127 F.3d at

529.

### G.    CONCLUSION

In sum: (1) the ALJ complied with the Appeals Council's order; (2) the ALJ

properly evaluated the opinion evidence; (3) Plaintiff has not successfully

challenged the ALJ's Step 4 RFC assessment; and, (4) Plaintiff has not

successfully challenged the ALJ's Step 3 conclusion.  Accordingly, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 17, 2017             s/Anthony P. Patti
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 17, 2017, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager for the
                                     Honorable Anthony P. Patti